Brian Strange, Esq. (Bar No. 103252)
lacounsel@earthlink.net
Gretchen Carpenter, Esq. (Bar No. 180525)
gcarpenter@strangeandcarpenter.com
David Swift, Esq. (Bar No. 235033)
dswift@strangeandcarpenter.com
STRANGE & CARPENTER
12100 Wilshire Blvd., 19th Floor
Los Angeles, CA  90025
Telephone:  (310) 207-5055
Fax:  (310) 826-3210

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

|  |  |
|---|---|
| | **Class Action** |
| KELLY CARTER, an individual, on behalf of herself and all other persons similarly situated, <br> Plaintiff, <br> v. <br> NOVARTIS PHARMACEUTICALS CORPORATION, NOVARTIS, INC., and NOVARTIS AG <br> Defendants. | **Case No. EDCV08-334 VAP (JCRx)** <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:   July 28, 2008 <br> Time:   10:00 a.m. <br> Judge:   Hon. Virginia A. Phillips <br> Place:   Courtroom 2 <br><br> Action Filed on March 11, 2008 |

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . iii

I.   INTRODUCTION AND FACTUAL BACKGROUND . 1

II.  ARGUMENT . . . . . . . . 4

    A.   Plaintiffs' Claims Are Not Preempted . . . 5

        1.   There is Strong Presumption Against Preemption . . . . . . . 6

        2.   Plaintiffs' Claims Do Not Seek To Impose Requirements That Are "Different From" Or "In Addition To" The Requirements Under the FDAMA . . . . . . . 7

        3.   Plaintiffs' Claims Are Exempted From the FDAMA's Express Preemption Provision And Are Therefore Not Expressly Preempted . 11

            a.   The Plain Meaning of The Statute Demonstrates That the Plaintiffs' Claims Are Product Liability Claims Within The Meaning of The FDAMA's Savings Clause . 11

            b.   The Legislative History of The FDAMA Supports This Reading of The Savings Clause . . . . . . 12

            c.   The Federal Courts To Examine The Savings Clause Have Reached Similar Conclusions . . . . . 13

            d.   The California Court of Appeal's Decision in *Kanter* Does Not Compel a Contrary Result . 15

            e.   The Other Two State Cases Relied On By Defendants, *Mills* and *Berenguer*, Are Equally Unavailing . . . 18

        4.   Plaintiffs' Claims Are Not Barred By The Doctrine of Implied Preemption . . . 18

            a.   Defendants Have Not Demonstrated Any Obstacle to Congressional Goals . 19

    B.   Plaintiffs' Consumer Fraud Claims Easily Satisfy Rule 9(b) . . . . . . . 21

III. CONCLUSION . . . . . . . 23

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbot v. America Cyanamid Co.*,
844 F.2d 1108 (4th Cir. 1988) ............................................................ 8

*American Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) ........................................................................ 6

*Bates v. Dow Agrosciences L.L.C.*,
544 U.S. 431 (2005) ....................................................................... 11

*Chamberlan v. Ford Motor Co.*,
314 F. Supp. 2d 953 (N.D.Cal. 2004) ................................... 8, 20, 21

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992) ........................................................... 4, 6, 9, 10

*Congoleum Corp. v. DLW Aktiengesellschaft*,
729 F.2d 1240 (9th Cir. 1984) .......................................................... 16

*Deirmenjian v. Deutsche Bank, A.G.*,
526 F. Supp. 2d 1068 (C.D.Cal. 2007) ............................................ 5

*Desiano v. Warner-Lambert & Co.*,
467 F.3d 85 (2d Cir. 2006) .................................................. 7, 10, 17

*Florida Lime & Avocado Growers v. Paul*,
373 U.S. 132 (1963) ........................................................................ 8

*Grier v. American Honda Motor Co.*,
529 U.S. 861 (2000) ....................................................................... 20

*Hill v. Searle Laboratoriess*,
884 F.2d 1064 (8th Cir. 1989) .......................................................... 21

*Hillsborough County Florida v. Automated Medical Laboratories, Inc.*,
471 U.S. 707 (1985) ......................................................... 7, 17, 19, 20

*Kociemba v. Searle & Co.*,
680 F. Supp. 1293 (D.Minn. 1998) .................................................. 22

*Leipart v. Guardian Industrial, Inc.*,
234 F.3d 1063 (9th Cir. 2000) .......................................................... 21

*Maryland v. Louisiana*,
451 U.S. 725 (1981) .................................................................... 7, 20

*Medtronic v. Lohr*,
518 U.S. 470 (1996) .................................................................... 7, 11

*Ministry of Health v. Shiley Inc.*,
858 F. Supp. 1426 (C.D.Cal. 1994) ..................................... 5-7, 9, 22

*Motus v. Pfizer, Inc.,*
127 F. Supp. 2d 1085 (C.D.Cal. 2000) ............................................... 7, 15, 20, 21

*Orso v. Bayer Corp.,*
2006 WL 2794975 (N.D.Ill. 2006) ........................................................ 15, 21

*Perfect 10, Inc. v. Visa Inter'l Serv. Association,*
494 F.3d 788 (9th Cir. 2007) ............................................................. 6

*Peters v. Astrazeneca, LP,*
417 F. Supp. 2d 1051 (W.D.Wis. 2006) .................................... 12, 14, 15, 20, 21

*Philip Morris, Inc. v. Harshbarger,*
122 F.3d 58 (1997) ...................................................................... 7

*Premier Electrical Construction Co. v. National Electrical Contractors Association, Inc.,*
814 F.2d 358 (7th Cir. 1987) ......................................................... 6

*Riegel v. Medtronic, Inc.,*
552 U.S. ___, 128 S. Ct. 999 (2008) ............................................... 11

*Schwarzschild v. Tse,*
69 F.3d 293 (9th Cir. 1995) ......................................................... 6

*Silvers v. Sony Pictures Entertainment, Inc.,*
402 F.3d 881 (9th Cir. 2005) ........................................................ 12

*Smith v. County of Los Angeles,*
535 F. Supp. 2d 1033 (C.D.Cal. 2008) ............................................. 6

*U.S. v. Stewart,*
420 F.3d 1007 (9th Cir. 2005) ...................................................... 13

*United States v. Gonzales,*
520 U.S. 1 (1997) ................................................................... 13

*United States v. Robinson,*
94 F.3d 1325 (9th Cir. 1996) ........................................................ 12

*United States v. Ventre,*
338 F.3d 1047 (9th Cir. 2003) ....................................................... 13

*Wells v. Ortho Parmaceutical Corp.,*
788 F.2d 741 (11th Cir. 1986) ..................................................... 15, 22

*Wisconsin Public Intervenor v. Mortier,*
501 U.S. 597 (1991) ................................................................. 7

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

## STATE CASES

*Berenguer v. Warner-Lambert Co.*,
2003 WL 24299241 (Fla.Cir. 2003) .................................................... 5, 10, 18, 19

*Bronco Wine Co. v. Jolly*,
33 Cal. 4th 943 (2004) ................................................................................... 8

*Fireside Bank v. Superior Court*,
40 Cal. 4th 1069 (2007) ................................................................................ 6

*Kanter v. Warner-Lambert Co.*,
99 Cal. App. 4th 780 (2002) ................................................... 5, 10, 16, 18, 19

*Scott v. Metabolife Intern., Inc.*,
115 Cal. App. 4th 404 (2004) ....................................................................... 18

*Talalai v. Cooper Tire & Rubber Co.*,
823 A.2d 888 (N.J. Super. 2001) ............................................................... 5, 23

*Warner-Lambert Co. v. Mills*,
117 S.W.3d 488 (Tex. App. 2003)
*rev'd on other grounds*, 157 S.W.3d 424 (Tex. 2005) ........................... 5, 10, 19

## FEDERAL CODES

21 U.S.C. § 360k ........................................................................................... 9

21 U.S.C. § 379r ........................................................................................... 8

21 U.S.C. § 379r(e) ...................................................................................... 12

## OTHER

H.R. Conf. Rep. 105-399 .............................................................................. 14

S.Rep. No. 105-43, at 66 (1997) ................................................................... 14

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

## I.  INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs Kirby Kotler, Erik Ostergard, and Kelly Carter have filed four separate actions against Defendant manufacturers of over-the-counter children's cough and cold medications.[1]  Plaintiffs allege, among other things, that Defendants violated a duty not to deceive consumers by selling medications for young children that they knew were both dangerous and ineffective.  Despite knowing their cough and cold medications were unsafe, Defendants promoted these products anyway to be part of this billion dollar market.  As a recent New York Times article noted, "*every* study performed in recent years shows that these medications have *no effect*, and a growing number of reports have concluded that they can be *dangerous*." (Kotler Compl., ¶ 11; Ostergard/Adams Compl., ¶ 11; Ostergard/Wyeth Compl., ¶ 10; Carter Compl., ¶ 9) (emphasis added).  Indeed, according to a recent FDA report, over-the-counter cough and cold medications have been linked with at least 123 pediatric deaths from 1996 through 2006. (Kotler Compl., ¶ 9; Ostergard/Adams Compl., ¶ 9; Ostergard/Wyeth Compl., ¶ 8; Carter Compl., ¶ 7).  Similarly, another study by the Center for Disease Control and Prevention found that between 2004 and 2005, more than 1,500 children under the age of two had suffered serious health problems after being treated with common cough and cold medications.  (Kotler Compl., ¶ 9; Ostergard/Adams Compl., ¶ 9; Ostergard/Wyeth Compl., ¶ 8; Carter Compl., ¶ 7).  Despite this strong body of evidence demonstrating that these medications are dangerous and ineffective for young children, Defendants failed to tell consumers that their products not only did not work, but in fact, were dangerous for young children.

---

[1] The four actions, *Kotler v. Johnson & Johnson, et al.*, *Ostergard v. Wyeth, et al.*, *Ostergard v. Adams Respiratory Therapeutics, Inc.*, et al., and *Carter v. Novartis Pharmaceuticals Corp., et al.*, have been consolidated for the purposes of Defendants' motion to dismiss.  Pursuant to the Court's May 16, 2008 order, Plaintiffs file this joint opposition brief in response to Defendants' common opening brief.  Only the caption pages differ among the four cases.

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1    Furthermore, Defendants continue to aggressively market and sell their products

2    for use by children between the ages of two and five despite knowing these

3    products to be dangerous.

4         In October of 2007, an FDA Advisory Panel finally examined what

5    Defendants knew and hid all along and expressly found that all over-the-counter

6    cough and cold medications were unsafe and ineffective for children under the age

7    of six.[2]  In January of 2008, the FDA adopted the panel's recommendations for

8    children under the age of two, but did not issue a decision with respect to children

9    between the ages of two and five.  According to the FDA's official statement:

10             Over-the-counter (OTC) cough and cold products should not be used

11             to treat infants and children less than 2 years of age because *serious*

12             *and potentially life-threatening side effects can occur* from such use.

13        Plaintiffs allege that before removing their products marketed towards

14   children under the age of two from the market, Defendants knew that these

15   medications were unsafe, but marketed and sold these products for use by children

16   under the age of two anyway.  (Kotler Compl., ¶ 17; Ostergard/Adams Compl., ¶

17   17; Ostergard/Wyeth Compl., ¶ 16; Carter Compl., ¶ 15).  The fact that the FDA

18   made the exact findings Plaintiffs are alleging here confirms in part Plaintiffs'

19   allegations that Defendants were marketing these products knowing that they were

20   dangerous.  Plaintiffs also allege, as the FDA's own advisory committee found,

21   that over-the-counter cough and cold medications are unsafe and ineffective for use

22   by children ages two to five.  (Kotler Compl., ¶ 16; Ostergard/Adams Compl., ¶

23   16; Ostergard/Wyeth Compl., ¶ 15; Carter Compl., ¶ 14).  Despite the strong body

24   of evidence demonstrating these medications are dangerous and ineffective,

25   Defendants continue to aggressively market and sell their products for use by

26   _____

27        [2] Around the same time, leading drug makers, including Defendants, announced
     a "voluntary withdrawal" of over-the-counter cough and cold medication for children
28   under two years of age.

                                        2

1   children between the ages of two and five.  (Kotler Compl., ¶¶ 17-21;

2   Ostergard/Adams Compl., ¶¶ 17-21; Ostergard/Wyeth Compl., ¶¶ 16-20; Carter

3   Compl., ¶¶ 15-19).

4       In these four separate actions against the manufacturers of over-the-counter

5   cough and cold medications for children, these three Plaintiffs allege violations of

6   the New Jersey Consumer Fraud Act, unjust enrichment, breach of express

7   warranties, breach of implied warranties, false and misleading advertising, and

8   fraudulent concealment on behalf of nationwide classes.  In the alternative,

9   Plaintiffs allege a claim for unfair and deceptive practices on behalf of a multi-state

10  class.  These actions have all been related, and have been consolidated for the

11  purposes of Defendants' present motion to dismiss.[3]

12      Despite their egregious and fraudulent behavior, Defendants now seek

13  immunity on the basis that the FDA approved these medications over thirty years

14  ago.  Unfortunately for Defendants, the FDAMA does not provide immunity for

15  fraudulent and deceptive behavior such as this.  Accordingly, Plaintiffs' claims are

16  not preempted, and the motions to dismiss should be denied.

17      Defendants first argue that Plaintiffs' claims are expressly preempted by

18  section 379r of the Food and Drug Administration Modernization Act

19  ("FDAMA").  This argument, however, ignores the United States Supreme Court's

20  decision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), which held that

21  claims based on a general duty not to deceive, such as Plaintiffs', do not constitute

22  state imposed "requirements" and are thus not preempted.  *Id.* at 516.  Furthermore,

23  this argument fails to take into account the presence of the statute's savings clause,

24

25      [3] Although the Court ordered Defendants to submit a single common brief,
    Defendants have submitted four seemingly identical briefs.  Because Defendants in
26  *Kotler v. Johnson & Johnson* were the first to file and serve their Motion to Dismiss
    and Memorandum of Points and Authorities in Support Thereof, all references to
27  Defendants' motions will be to the Memorandum of Points and Authorities filed in
28  *Kotler v. Johnson & Johnson* (hereafter referred to as "Mem.").

1    which expressly saves product liability suits such as these from preemption.

2        Defendants next argue that Plaintiffs' claims are preempted under the

3    doctrine of implied conflict preemption.  This argument not only ignores the clear

4    intent of Congress to allow product liability law to supplement the drug labeling

5    process, it also ignores the widely accepted view that FDA regulations are

6    minimum standards which do not preempt state law claims.

7        In support of these two preemption arguments, Defendants rely almost

8    exclusively on three state court decisions — *Kanter v. Warner-Lambert Co.*, 99

9    Cal.App.4th 780 (2002), *Berenguer v. Warner-Lambert Co.*, 2003 WL 24299241

10   (Fla.Cir. 2003) (unpublished), and *Warner-Lambert Co. v. Mills*, 117 S.W.3d 488

11   (Tex. App. 2003) *rev'd on other grounds*, 157 S.W.3d 424 (Tex. 2005).  The lack

12   of federal authority cited in support of Defendants' preemption arguments speaks

13   volumes.  Indeed, a district court in this district has already considered and rejected

14   many of Defendants' exact arguments.  *See Ministry of Health v. Shiley Inc.*, 858

15   F.Supp. 1426 (C.D.Cal. 1994).  Furthermore, the only two federal court decisions

16   to address federal preemption in the context of over-the-counter medications both

17   hold that similar claims are *not* preempted.

18       Finally, Defendants' argument that the Complaints do not satisfy the

19   pleading requirements of Rule 9(b) is without merit.  The purpose of Rule 9(b)'s

20   heightened pleading standards is to put a defendant on notice of the claims against

21   it.  *See Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 893 (N.J.Super. 2001).

22   Here, Defendants are on notice of misconduct with which they are charged —

23   marketing and selling over-the-counter medications to children under the age of six

24   when Defendants know those products to be unsafe and ineffective.  Nothing more

25   is required.

26   **II.   ARGUMENT**

27       "A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in

28   the complaint."  *Deirmenjian v. Deutsche Bank, A.G.*, 526 F.Supp.2d 1068, 1073

(C.D.Cal. 2007). "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988)). "Further, when considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are accepted as true and should be construed 'in the light most favorable to the plaintiff.'" *Smith v. County of Los Angeles*, 535 F.Supp.2d 1033, 1034 (C.D.Cal. 2008) (quoting *Perfect 10, Inc. v. Visa Inter'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007)).

## A.   Plaintiffs' Claims Are Not Preempted[4]

Under the Supremacy Clause of the United States Constitution, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). "Congress may effect preemption through either 'express' or 'implied' means." *Ministry of Health v. Shiley Inc.*, 858 F.Supp. 1426, 1431 (C.D.Cal. 1994). "Express preemption requires that Congress state affirmatively its intention to preempt or supersede state law, whereas implied preemption is determined by judicial inference 'where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation.'" *Id.* at 1431-32

---

[4] Plaintiffs also note that it would be appropriate for this Court to allow briefing and hearing on class certification issues before ruling on any merits issues, such as preemption. *See Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) ("[D]istrict courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified."). This approach would avoid what is described as the "one-way intervention" problem and would serve the interests of judicial economy. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974); *Premier Electrical Construction Co. v. National Electrical Contractors Assn., Inc.*, 814 F.2d 358, 363 (7th Cir. 1987); *Fireside Bank v. Superior Court*, 40 Cal.4th 1069, 1078 (2007). Under this approach, if a class is certified, the Court's ruling on preemption, whether favorable or not, would be binding on all class members.

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1   (quoting *Hillsborough County v. Automated Medical Labs*, 471 U.S. 707, 713

2   (1985)).

3         **1.**    **There is a Strong Presumption Against Preemption**

4         "The Supreme Court has consistently imposed a strong presumption against

5   preemption if it would mean superseding a state's historic police powers."

6   *Ministry of Health*, 858 F.Supp. at 1432.  As the Supreme Court has noted, courts

7   must "start with the assumption that the historic police powers of the States were

8   not to be superseded by the Federal Act unless that was the clear and manifest

9   purpose of Congress."  *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 605

10   (1991).  "Consideration under the Supremacy Clause starts with the basic

11   assumption that Congress did not intend to displace state law."  *Maryland v.*

12   *Louisiana*, 451 U.S. 725, 746 (1981).

13         "The presumption against preemption is particularly strong when the

14   regulations in question relate to health and safety."  *Ministry of Health*, 858

15   F.Supp. at 1432.  *See, e.g., Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 85-86

16   (applying a "strong presumption against preemption" concerning state health and

17   safety regulations and finding that those regulations do not frustrate congressional

18   purposes).  As the Second Circuit recently noted, "[i]t has long fallen within the

19   province of states to safeguard the health and safety of their citizens ... [and

20   c]onsonant with the 'historic primacy of state regulation' of these matters, the

21   power of states to govern in this field is considerable and undisputed." *Desiano v.*

22   *Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) (quoting *Medtronic v.*

23   *Lohr*, 518 U.S. 470, 485 (1996)).  *See also Hillsborough*, 471 U.S. at 719 ("[T]he

24   regulation of health and safety matters is primarily and historically a matter of

25   local concern.");  *Motus v. Pfizer, Inc.*, 127 F.Supp.2d 1085, 1092 n.6 (C.D.Cal.

26   2000) ("The Court notes that several Supreme Court cases describe a presumption

27   against finding preemption, especially where state or local regulation of matters

28   related to health and safety are concerned.").  Also within the traditional powers of

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1   the states is the power to "prevent the deception of consumers" and "keep

2   unhealthful or unsafe commodities off grocers shelves." *Florida Lime & Avocado*

3   *Growers v. Paul*, 373 U.S. 132, 146 (1963). *See also Bronco Wine Co. v. Jolly*, 33

4   Cal.4th 943, 958 (2004) (holding that consumer protection relating to labeling has

5   largely and traditionally been regulated by the states); *Chamberlan v. Ford Motor*

6   *Co.*, 314 F.Supp.2d 953, 959 (N.D.Cal. 2004) ("Fraud and unfair business practices

7   are also areas traditionally regulated by the States."). The presumption against

8   preemption is even stronger where, as here, there is no federal remedy. *See Abbot*

9   *v. Am. Cyanamid Co.*, 844 F.2d 1108, 1112 (4th Cir. 1988).

10      Here, Plaintiffs have alleged that Defendants know their over-the-counter

11   cough and cold medications are dangerous and ineffective for children under the

12   age of six, but that Defendants aggressively market and sell their products as being

13   safe and effective nevertheless. As noted above, it is well within traditional

14   powers of the states to "safeguard the health and safety of their citizens," "prevent

15   the deception of consumers" and "keep unhealthful or unsafe commodities off

16   grocers shelves." Accordingly, the strong presumption against preemption attaches

17   to these lawsuits.

18          **2.     Plaintiffs' Claims Do Not Seek To Impose "Requirements"**

19                  **That Are "Different From" Or "In Addition To" The**

20                  **Requirements Under the FDAMA**

21      Defendants' primary argument is that Plaintiffs' claims are expressly

22   preempted by section 379r of the FDAMA, codified at 21 U.S.C. § 379r. *See*

23   Mem. at 14-20. As Defendants point out, in enacting the FDAMA, Congress

24   included an express preemption provision which provides that "no state ... may

25   establish or continue in effect any requirement (1) that relates to the regulation of a

26   [nonprescription] drug ...; and (2) that is different from or in addition to, or that is

27   otherwise not identical with, a requirement under this Act ..." 21 U.S.C. § 379r.

28   According to Defendants, this provision bars Plaintiffs' claims because "they seek

---

7

1   to impose state-law requirements that are not identical with federal requirements."
2   Mem. at 15.

3        This argument is simply wrong.  Plaintiffs do not seek to impose any state
4   established "requirements" relating to the regulation of a drug.  Instead, Plaintiffs
5   bring claims based on fraud and breach of warranty, which do *not* constitute state-
6   established requirements.  Indeed, Defendants' exact arguments were rejected by a
7   court in this very district.  *See Ministry of Health v. Shiley Inc.*, 858 F.Supp. 1426
8   (C.D.Cal. 1994) (discussing preemption under the Medical Device Amendments'
9   express preemption clause, 21 U.S.C. § 360k, which, like the express preemption
10  clause at issue in the present actions, preempts any "requirement" which is
11  "different from" or "in addition to" any requirement in the Act).  In *Ministry of*
12  *Health*, defendants made essentially the same argument Defendants make in the
13  present actions — that since the FDA had approved the product's labeling,
14  allowing the plaintiffs' claims "effectively would impose additional or different
15  requirements on the product's labeling and packaging."  *Id.* at 1439.  Relying on
16  the Supreme Court's decision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504
17  (1992), the court explicitly rejected this argument, and held that the fraud,
18  misrepresentation and warranty claims were not preempted.  The court reasoned
19  that the fraud and misrepresentation claims were not preempted because "such
20  claims are based on a general duty not to deceive, rather than the requirements
21  imposed by the state."  *Ministry of Health*, 858 F.Supp. at 1440.  Similarly, the
22  court reasoned that the warranty claims "arise from the manufacturer and are not
23  requirements imposed by the state, so they are not preempted."  *Id.*

24       This result is fully consistent with the Supreme Court's decision in
25  *Cipollone*.  In *Cipollone*, the Supreme Court held that plaintiffs' claims were not
26  preempted because "[s]uch claims are predicated not on a duty 'based on smoking
27  and health' but rather on a more general obligation the duty not to deceive."
28  *Cipollone*, 505 U.S. at 528-29.  With respect to the warranty claims, the Court

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1    noted that "[a] manufacturer's liability for breach of an express warranty derives

2    from, and is measured by, the terms of that warranty.  Accordingly, the

3    'requirement[s]' imposed by an express warranty claim are not 'imposed under

4    State law,' but rather imposed by the warrantor." *Id.* at 525.[5]

5         Similarly, in *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85 (2d Cir. 2006),

6    the Second Circuit held that the FDCA did not preempt plaintiffs' consumer

7    misrepresentation claims.  The court emphasized that a consumer

8    misrepresentation claim involves a duty to consumers, not simply a duty to the

9    FDA.  According to the Second Circuit:

10        Significantly, all of the claims advanced by Appellants in this case *are*

11        *premised on traditional duties between a product manufacturer and*

12        *Michigan consumers.*  None of them derives from, or is based on, a

13        newly-concocted duty between a manufacturer and a federal agency.

14        As a result, were we to conclude that Appellants' claims were

15        preempted, we would be holding that Congress, without any explicit

16        expression of intent, should nonetheless be taken to have modified

17        (and, in effect, gutted) *traditional state law duties between*

18        *pharmaceutical companies and their consumers.*  We see no reason,

19        nor can we identify any precedent, to justify such a result.

20    *Id.* at 94-95 (emphasis added).

---

22    [5] The three state court decisions relied on by Defendants, *Kanter v. Warner-
23    Lambert Co.*, 99 Cal.App.4th 780 (2002), *Berenguer v. Warner-Lambert Co.*, 2003
     WL 24299241 (Fla.Cir. 2003) (unpublished), and *Warner-Lambert Co. v. Mills*, 117
24    S.W.3d 488 (Tex. App. 2003) *rev'd on other grounds*, 157 S.W.3d 424 (Tex. 2005),
25    are clearly distinguishable.  In each of these cases, plaintiffs' allegations related only
     to the sufficiency of the products' labeling.  The present actions, on the other hand,
26    allege that Defendants engaged in fraudulent conduct by selling products that they
27    knew to be dangerous and ineffective.  Because the present actions concern the
     general duty not to deceive, rather than the sufficiency of the products' labels, the
28    three state court decisions relied on by Defendants are irrelevant.

9

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1    Finally, the Supreme Court's recent decision in *Bates v. Dow Agrosciences*
2  *L.L.C.*, 544 U.S. 431 (2005) is also instructive.  In *Bates*, relying on *Medtronic v.*
3  *Lohr*, 518 U.S. 470, 513 (1996), the Supreme Court held that state law claims
4  based on the defendant's alleged failure to disclose negative effects of a pesticide
5  were not preempted by the Federal Insecticide, Fungicide, and Rodent Act
6  ("FIFRA"), despite the Act's express preemption provision.  That provision, which
7  is almost identical to the FDAMA preemption provision, preempts "any statutory
8  or common law rule that would impose a labeling requirement that diverges from
9  those set out in FIFRA and its implementing regulations." *Id.* at 452.  The Court
10  rejected the defendant's preemption argument, reasoning that the express
11  preemption provision "*does not preclude States from imposing different or*
12  *additional remedies, but only different or additional requirements.*" *Id.* at 448
13  (emphasis added) (quoting *Medtronic,* 518 U.S. at 513 (1996)).  This holding was
14  recently reaffirmed in *Riegel v. Medtronic*, 552 U.S. __, 128 S.Ct. 999 (2008).  As
15  Justice Stevens noted in *Riegel*:

16        And while a jury's finding of liability may induce a defendant to alter
17        its device or its label, this does not render the finding a "requirement"
18        within the meaning of the MDA. "A requirement is a rule of law that
19        must be obeyed; an event, such as a jury verdict, that merely
20        motivates an optional decision is not a requirement."
21  *Id.* at 1013, n.1 (Stevens, J., concurring) (quoting *Bates*, 544 U.S. at 445 (2005)).
22    Here, Plaintiffs have alleged that Defendants sell medications that they know
23  to be dangerous for children under six, but that Defendants continue to promote
24  and sell their medications anyway.  This is not a case about insufficient labeling;
25  this is a case about Defendants' deceptive and fraudulent behavior in selling and
26  promoting medications they know to be dangerous.  Despite this egregious and
27  fraudulent behavior, Defendants now seek immunity on the basis that the FDA
28  approved these medications over thirty years ago.  Unfortunately for Defendants,

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1    the FDAMA does not provide immunity for fraudulent and deceptive behavior

2    such as this.  Accordingly, Plaintiffs' claims are not preempted, and the motions to

3    dismiss should be denied.

**3.    Plaintiffs' Claims Are Exempted From the FDAMA's**
**Express Preemption Provision And Are Therefore Not**
**Expressly Preempted**

7        In any event, Plaintiffs' claims are not preempted because they are "saved"

8    by the FDAMA's savings provision, 21 U.S.C. § 379r(e).  The FDAMA's express

9    preemption provision includes a savings clause that exempts from preemption "any

10   action or the liability of any person under the product liability law of any State."

11   21 U.S.C. § 379r(e).  Specifically, the savings clause provides:  "Nothing in this

12   section shall be construed to modify or otherwise affect any action or the liability

13   of any person under the product liability law of any State."  *Id.*  As a recent Federal

14   court noted, "Section 379r(e) leaves room explicitly for state product liability laws

15   to supplement the drug labeling process."  *Peters v. Astrazeneca, LP*, 417

16   F.Supp.2d 1051, 1056 (W.D.Wis. 2006).  Pursuant to this savings clause,

17   Plaintiffs' claims would not be preempted even if they otherwise would fall within

18   the scope of the express preemption statute.

**a)    The Plain Meaning of The Statute Demonstrates That**
**the Plaintiffs' Claims Are Product Liability Claims**
**Within The Meaning of The FDAMA's Savings**
**Clause**

23       "[I]t is well-established that courts should interpret a statute according to its

24   plain meaning."  *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 896

25   (9th Cir. 2005).  *See United States v. Robinson*, 94 F.3d 1325, 1328 (9th Cir. 1996)

26   ("If the language of a statute is unambiguous, the plain meaning controls.").  Under

27   the plain meaning of the statute, Plaintiffs' claims that Defendants' products are

28   dangerous and ineffective clearly fall within the purview of the term "product

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

liability" and are thus exempted from preemption under the FDAMA's savings clause.  Black's Law Dictionary (8th ed. 2004),[6] defines "product liability" as "[t]he legal theory by which liability is imposed on the manufacturer or seller of a defective product" or "[a] manufacturer's or seller's tort liability for *any damages or* injuries suffered by a buyer, user, or bystander as a result of a defective product." *Id.* (emphasis added).  Either one of these definitions would clearly encompass Plaintiffs' claims.  Indeed, included in Black's Law Dictionary definition is the fact that "[p]roducts liability can be based on a theory of negligence, strict liability, or breach of warranty." *Id.*  Similarly, Prosser and Keeton on the Law of Torts, § 95 at 677-678 (5th ed. 1984), defines "product liability law" to include legal doctrines that impose liability based on a "condition that may disappoint the purchaser's expectations as to [the product's] efficacy or fitness for the purposes intended," resulting in, for example, "intangible economic losses."  Plaintiffs' claims fit comfortably within the scope of these definitions, and thus within the scope of the savings clause.

### b)     The Legislative History of The FDAMA Supports This Reading of The Savings Clause

"Under traditional principles of statutory interpretation, if a statute's plain meaning is clear, resort to legislative history is unnecessary." *United States v. Ventre*, 338 F.3d 1047, 1052 (9th Cir. 2003).  *See also United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").  Nevertheless, to the extent the Court decides to examine the legislative history, that history supports the plain reading

---

[6] Courts in general, and specifically the Ninth Circuit, often turn to Black's Law Dictionary as the first step in statutory construction. *See, e.g., U.S. v. Stewart*, 420 F.3d 1007, 1020 (9th Cir. 2005) (turning to Black's law dictionary as a first step in statutory construction).  Indeed, Defendants themselves endorse this approach — turning to Black's Law Dictionary to determine the plain meaning of the terms "warning" and "requirement" in the FDAMA. *See* Mem. at 17, n.17.

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1    that Plaintiffs' claims are not preempted.

2        For example, in its report to Congress, the Conference Committee discussed

3    the effect of the FDAMA on the enforcement of state "little FTC" laws (such as the

4    New Jersey Consumer Fraud Act) which have been "applied to prohibit

5    unsubstantiated claims for nonprescription drugs and cosmetics, and to require

6    corrective advertising." H.R. Conf. Rep. 105-399, p. 103. The FDAMA's

7    preemption provision, the Conference Committee emphasized, "*is not intended to*

8    *preempt the application of these laws under such circumstances*." *Id*. (emphasis

9    added).

10       Indeed, one of the bill's co-sponsors, Senator Jeffords of Vermont, stated

11   during the Senate discussions that preemption or "national uniformity" provisions

12   would "in no way affect State enforcement powers, such as seizure, embargo, or

13   judicial proceedings, *that States now use to guard against adulterated,*

14   *misbranded, or otherwise unsafe products*." *See* Senator Jeffords' comments

15   regarding Motion to Proceed (Senate Bill 830), Sept. 8, 1997, Congressional

16   Record at S8880 (emphasis added). Finally, the Senate Committee Report noted

17   that "the legislation explicitly provides that it shall not be construed to modify or

18   otherwise affect the traditional product liability law of any State. Tort liability

19   rules and requirements would remain unchanged and unaffected." S.Rep. No. 105-

20   43, at 66 (1997). Therefore, the legislative history supports inclusion of Plaintiffs'

21   claims within the FDAMA's savings clause as well.

22           **c)    The Federal Courts To Examine The Savings Clause**

23                   **Have Reached Similar Conclusions**

24       The two federal courts to examine the FDAMA's savings clause both find a

25   broad array of product liability claims exempted from preemption. In *Peters v.*

26   *Astrazeneca, LP*, 417 F.Supp.2d 1051 (W.D.Wis. 2006), an inmate brought an

27   action against the manufacturers of the over-the-counter medication Prilosec.

28   Among other things, plaintiff alleged that defendants failed to warn him of the

---

13

1   dangers associated with the use of Prilosec.  In rejecting defendants' preemption

2   argument, the court held that "[s]ection 379r(e) leaves room explicitly for state

3   product liability laws to supplement the drug labeling process." *Id.* at 1056.  The

4   court went on to note that its holding was consistent with the widely accepted view

5   that "a drug manufacturer's compliance with the FDA's labeling requirements does

6   not preempt state-law claims." *Id.  See also Wells v. Ortho Parmaceutical Corp.*,

7   788 F.2d 741, 746 (11th Cir. 1986) ("An FDA determination that a warning is not

8   necessary may be sufficient for federal regulatory purposes but still not be

9   sufficient for state tort law purposes."); *Motus v. Pfizer, Inc.*, 127 F.Supp.2d 1085,

10   1092 n.6 (C.D.Cal. 2000) ("[M]ost courts have found that FDA regulations as to

11   design and warning standards are minimum standards which do not preempt state

12   law defective design and failure to warn claims.").

13        In *Orso v. Bayer Corp.*, 2006 WL 2794975 (N.D.Ill. 2006), the court

14   similarly found the plaintiff's claims to be exempted from preemption pursuant to

15   the FDAMA's savings clause.  In *Orso*, plaintiff brought a nationwide class action

16   against the manufacturers of an over-the-counter nasal decongestant manufactured

17   by Bayer.  The court held that plaintiff's negligence claim was not preempted by

18   the FDAMA because "[w]hile the FDA Act restricts states from regulating drugs

19   falling within its ambit, it does not bar recovery for actions in tort." *Id.* at *5.[7]

20   Referencing the FDAMA's savings clause, the court noted that "the FDA Act

21   explicitly states that product liability claims do not fall within its parameters." *Id.*

22   (citing 21 U.S.C. § 379r(e)).

23   ///

---

24

25       [7] In *Orso*, the court dismissed plaintiff's failure to warn claim because, in a

26   previous decision, the Seventh Circuit had already held that defendant's warnings on the product were sufficient as a matter of law. *Id.* at *3.  For our purposes, it is worth

27   noting that the *Orso* plaintiff's failure to warn claim was not dismissed on preemption grounds.  And, of course, in the present actions, no court has found that Defendants'

28   warnings are sufficient as a matter of law.

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1            **d)**     **The California Court of Appeal's Decision in *Kanter***

2                     **Does Not Compel a Contrary Result**

3        Defendants will likely argue that, based on *Kanter v. Warner-Lambert Co.*,

4 99 Cal.App.4th 780 (2002), the FDAMA's savings clause does not save Plaintiffs'

5 claims because Plaintiffs have not alleged physical injury. In *Kanter*, plaintiffs

6 brought a class action against the manufacturers of products for treatment of head

7 lice, alleging that the products were not as effective as defendants claimed. *Id.* at

8 788. The California Court of Appeal, interpreting the FDAMA, held that

9 plaintiffs' claims were preempted under the FDAMA's express preemption

10 provision and that the savings clause did not apply. For a number of reasons, the

11 *Kanter* decision does not control the result and is not persuasive in the present

12 cases.

13       <u>First</u>, *Kanter* is a decision of the California Court of Appeal based on its

14 interpretation of federal law, and its holding is therefore not binding and of

15 minimal persuasive authority. *See, e.g., Congoleum Corp. v. DLW*

16 *Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) ("Of course, the state

17 court's interpretation of federal law does not bind our decision ...").

18       <u>Second</u>, the allegations of *Kanter* are clearly distinguishable from the

19 present claims. In *Kanter*, the state court held that the plaintiffs' claims that the

20 products were ineffective were not technically product liability claims within the

21 meaning of the savings clause. Unlike the *Kanter* plaintiffs, however, Plaintiffs

22 here have alleged that Defendants' products are not only ineffective, *but are*

23 *affirmatively unsafe as well*. As noted above, even the FDA has taken the official

24 position that Defendants' "products should not be used to treat infants and children

25 less than 2 years of age because serious and potentially life-threatening side effects

26

27

28

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1   can occur from such use."[8]  Clearly, in providing an express exemption from

2   preemption for state product liability laws, Congress intended to maintain the

3   traditional right of the states to "safeguard the health and safety of their citizens."

4   *Desiano v. Warner-Lambert & Co.*, 467 F.3d at 86.  *See also Hillsborough*, 471

5   U.S. at 719 ("[T]he regulation of health and safety matters is primarily and

6   historically a matter of local concern.").  Without question, this case implicates the

7   traditional right of the states to protect the health and safety of their citizens.[9]

8   Because the *Kanter* plaintiffs made no allegations regarding the safety of the

9   products at issue, the case did not implicate the states' traditional rights and duties

10  to protect the health and safety of their citizens, as this case does.  Thus, the *Kanter*

11  decision is not relevant to the present dispute.

12      Third, and to the extent the Court finds the *Kanter* opinion the least bit

13  relevant, Plaintiffs respectfully submit that the California Court of Appeal's

14  reading of the FDAMA's savings provision is incorrect.  In *Kanter*, the court held

15  that the savings clause did not apply because "[u]nder the product liability law of

16  California, injury to the plaintiff from a defective product is an essential element of

17  a cause of action."  *Id.* at 80.  This is simply not true.  In looking to the product

18  liability law of California, the court looked only to the law regarding *strict product*

19  *liability*.  While is true that to state a claim for strict product liability under

20

21  _____

22      [8] And, although the FDA has not taken an official position, an FDA Advisory
    Committee found that Defendants' medications are also unsafe for children between

23  the ages of two and five.

24      [9] Indeed, according to a recent FDA report, over-the-counter cough and cold
    medications have been linked with at least 123 pediatric deaths from 1996 through

25  2006. (Kotler Compl., ¶ 9; Ostergard/Adams Compl., ¶ 9; Ostergard/Wyeth Compl.,

26  ¶ 8; Carter Compl., ¶ 7).  Similarly, another study by the Center for Disease Control
    and Prevention found that between 2004 and 2005, more than 1,500 children under

27  the age of two had suffered serious health problems after being treated with common

28  cough and cold medications. *Id.*

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1   California law a plaintiff must have suffered a physical injury, strict product

2   liability is only a subset of all possible product liability claims.  As noted above,

3   Black's Law Dictionary lists strict products liability as one of three distinct subsets

4   of product liability actions.  *See* Black's Law Dictionary (8th ed. 2004) ( "Products

5   liability can be based on a theory of negligence, strict liability, or breach of

6   warranty.").  At least one of these three subsets, warranty claims, has no such

7   physical injury requirement.  *See, e.g., Scott v. Metabolife Intern., Inc.*, 115

8   Cal.App.4th 404, 415-16 (2004) (noting that to state a claim for breach of

9   warranty, the plaintiff must allege "injury, damage, loss or harm").

10       <u>Finally</u>, and most importantly, the *Kanter* court offers no explanation for its

11   application of California law to determine what Congress meant by the term

12   "product liability."  Indeed, there is no persuasive rationale which would explain

13   why, in determining Congress' intent, courts should look to the law of any

14   particular state.  Such a rule would undermine Congress's purported goal of

15   national uniformity by looking to the particularities and idiosyncracies of each

16   individual state's laws.  In enacting the express preemption provision, entitled

17   "National Uniformity For Nonprescription Drugs," it seems clear that Congress did

18   not intend to base the decision of whether a particular claim is preempted on the

19   judicial forum or particular state law at issue.[10]

20

---

21       [10] It is worth noting that Defendants make no argument that Plaintiffs' claims
22   relating to warranties Defendants made outside the context of the statements actually
23   approved by the FDA would be preempted.  As the *Kanter* court noted, "express
     warranty claims based on statements made outside the context of approved labeling
24   or packaging, such as claims made orally or in advertising materials, are *not*
25   necessarily preempted." *Kanter*, 99 Cal.App.4th at 795 (emphasis added). *See also*
     *Berenguer*, 2003 WL 24299241, *1 (granting "plaintiffs leave to amend based on their
26   contention at the oral argument that defendants had made false statements in
27   advertisements for [their products] that *went beyond the FDA-approved statements for*
     *the medications' labels*." *Id*. at *1 (emphasis added).  Here, Plaintiffs have alleged
28   exactly those sort of claims.  Each of the Complaints points to specific false

---

17

e)    **The Other Two State Cases Relied On By Defendants,** *Mills* **and** *Berenguer,* **Are Equally Unavailing**

In addition to relying on the California Court of Appeal's decision in *Kanter v. Warner-Lambert Co.*, 99 Cal.App.4th 780 (2002), Defendants rely heavily on two obscure state court decisions, *Berenguer v. Warner-Lambert Co.*, 2003 WL 24299241 (Fla.Cir. 2003) (unpublished), and *Warner-Lambert Co. v. Mills*, 117 S.W.3d 488 (Tex.App. 2003) *rev'd on other grounds*, 157 S.W.3d 424 (Tex. 2005). That these cases form the entire basis of Defendants' preemption arguments speaks volumes in and of itself. Both of these cases involve the identical products and the identical allegations at issue in *Kanter*, and thus add nothing new to the discussion. In each case, the courts cited to *Kanter* and mimicked the California Court of Appeal's reasoning. For the reasons discussed in detail above, *Kanter* is not binding, distinguishable from the present actions, and incorrect.

**4.    Plaintiffs' Claims Are Not Barred By The Doctrine of Implied Preemption**

Defendants also argue that Plaintiffs' claims are barred by the doctrine of implied conflict preemption. Mem. at 20. Under this theory, a state law claim is preempted when "compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillsborough*, 471 U.S.

---

representations and warranties made by Defendants that were outside the scope of the approved labeling. *See, e.g.*,Ostergard/Wyeth Compl., ¶ 20 ("[T]he product labeling and packaging for Dimetapp® Toddler's Drops Decongestant states: ... 'Dimetapp® Toddler's Drops Decongestant contains a formula created especially for toddlers' ..."). This is false and deceptive — Defendants' products were not designed or specifically formulated for young children. Instead, as Defendants' motion itself notes, the products in question were formulated for adults and then simply marketed for use in children in lower dosages. Mem. at 8 (noting that for children 2 to 6 years of age, the pediatric dosage is simply 1/4 the adult dosage).

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1    at 713.  According to Defendants, Plaintiffs' claims that Defendants' medications

2    are unsafe and ineffective would obstruct Congress's goal of providing uniform

3    nationwide regulation of over-the-counter medications.  Mem. at 21.

4         As set forth above, the preemption analysis "starts with the basic assumption

5    that Congress did not intend to displace state law."  *Maryland v. Louisiana*, 451

6    U.S. 725, 746 (1981).  "This presumption is even stronger where the federal

7    legislation or regulations involve areas the states have traditionally occupied."[11]

8    *Peters*, 417 F.Supp.2d at 1055.  Finally, "[t]he party contending that a claim is

9    preempted bears the burden of establishing preemption."  *Motus*, 127 F.Supp.2d at

10   1092 (citing *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995)).

11              a)      **Defendants Have Not Demonstrated Any Obstacle to**

12                      **Congressional Goals**

13        Defendants have not argued that there is any actual conflict, such that

14   "compliance with both federal and state regulations is a physical impossibility."

15   *Hillsborough*, 471 U.S. at 713.  Instead, Defendants argue that Plaintiffs' claims, if

16   allowed to proceed, would somehow stand as an obstacle to Congress's objectives.

17   Mem. at 21.  According to Defendants, the Supreme Court's decision in *Grier v.*

18   *American Honda Motor Co.*, 529 U.S. 861 (2000), compels the conclusion that

19   Plaintiffs' claims will undermine Congress's goal of regulating over-the-counter

20   drugs on a nationwide basis.  Defendants' argument, however, misreads *Grier*.  As

21   the court held in *Chamberlan v. Ford Motor Co.*, 314 F.Supp.2d 953, 959

22   (N.D.Cal. 2004):

23        Airbag cases, such as *Grier*, do not support an assertion of conflict

24

25        [11] As noted above, these are exactly the sort of cases to which the presumption

26   against preemption attaches.  *See, e.g., Motus v. Pfizer, Inc.*, 127 F.Supp.2d 1085,

27   1092 n.6 (C.D.Cal. 2000) ("The Court notes that several Supreme Court cases
     describe a presumption against finding preemption, especially where state or local

28   regulation of matters related to health and safety are concerned.").

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

preemption due to the frustration of Congressional intent to achieve uniformity because they hold State claims preempted on the basis of an actual conflict with specific, explicitly enunciated safety standards. *Chamberlan*, 314 F.Supp.2d at 963. Judge Matz, of the Central District of California, reached the same conclusion regarding *Grier* in *Motus v. Pfizer, Inc.*, 127 F.Supp.2d 1085, 1092 n.7 (C.D.Cal. 2000) (noting that in *Grier*, the Supreme Court found an actual conflict with Congress's stated intent to "provide a manufacturer with a range of choices among different passive restraint systems"). Accordingly, *Grier* does not support Defendants' preemption arguments.

Moreover, the argument that Plaintiffs' claims would somehow frustrate Congress's goal of uniform nationwide standards completely ignores the fact that Congress enacted a provision which "leaves room explicitly for state product liability laws to supplement the drug labeling process." *Peters*, 417 F.Supp.2d at 1056 (citing 21 U.S.C. § 379r(e)). Where, as here, we have strong evidence that Congress *intended* state law claims to work in concert with FDA regulations, any argument that preemption should be implied necessarily fails. *See Leipart v. Guardian Indus., Inc.*, 234 F.3d 1063 (9th Cir. 2000) ("[T]he purpose of Congress is the ultimate touchstone in very preemption case.") (citations omitted).

Indeed, in the two federal cases to examine implied preemption in the context of over-the-counter medications, both have found similar claims were *not* preempted. *See Peters*, 417 F.Supp. at 1057 ("The mere fact that the FDA does not require a warning on a product label does not necessarily create a conflict."); *Orso*, 2006 WL 2794975, **4-5 (denying preemption argument on the grounds that the FDA labeling requirements were "minimum thresholds").

These decisions are consistent with the generally accepted view that "FDA regulations as to design and warning standards are minimum standards which do not preempt state law defective design and failure to warn claims." *Motus,* 127 F.Supp.2d at 1092 n.6. *See also Hill v. Searle Labs.*, 884 F.2d 1064, 1068 (8th Cir.

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1    1989) ("FDA approval is not a shield to liability ... FDA regulations are generally

2    minimum standards of conduct ..."); *Kociemba v. Searle & Co.*, 680 F.Supp. 1293,

3    1299 (D.Minn. 1998) ("The mere fact that [defendant's product] received FDA

4    approval does not, by itself, indicate that Congress intended to preclude state tort

5    actions against prescription drug manufacturers.  This is especially true in light of

6    the widely held view that FDA regulation of prescription drugs establishes

7    minimum standards ...").  *See also Wells v. Ortho Pharmaceutical Corp.*, 788 F.2d

8    741, 746 (11th Cir. 1986) ("An FDA determination that a warning is not necessary

9    may be sufficient for federal regulatory purposes but still not be sufficient for state

10   tort law purposes.").

11        Accordingly, Plaintiffs' claims do not stand as an obstacle to Congress's

12   objectives and are therefore *not* impliedly preempted.  *See e.g., Ministry of Health*,

13   858 F.Supp. at 1432 ("Even in areas where Congress has implemented

14   comprehensive legislation, courts have been reluctant to construe such legislation

15   as barring recovery under state tort law.").

16        **B.    Plaintiffs' Consumer Fraud Claims Easily Satisfy Rule 9(b)**

17        Defendants' argument that Plaintiffs' claims under the New Jersey

18   Consumer Fraud Act do not meet the requirements of Rule 9(b) is without merit as

19   well.[12]  "The purpose of Rule 9(b) is to provide notice of the precise misconduct

20   with which defendants are charged and to prevent false or unsubstantiated charges.

21   *Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 381 (D.N.J. 2006)

22   (citations omitted).  Here, Defendants are on notice of the misconduct with which

23   they are charged.  Plaintiffs allege that Defendants market and sell over-the-

24   counter cough and cold medications for use in young children, which they know to

25

26        [12] Notably, Defendants argue *only* that Plaintiffs' claims brought under the New
27   Jersey Consumer Fraud Act do not meet the requirements of Rule 9(b).  Defendants
     have made no argument that Plaintiffs' other claims, or the claims brought on behalf
28   of the alternative multi-state class, are insufficient, and they are not.

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1   be dangerous and ineffective.  No more notice is required.  The Fifth Circuit in

2   *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 178 n.18 (5th Cir.

3   1968) perhaps put it best:

4       F.R.Civ.P. 9(b), requiring that "all averments of fraud ... shall be

5       stated with particularity," is no stumbling block.  Defendants stated:

6       The air units would heat.  They did not heat.  How much more

7       specific can one get?

8       In *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 893 (N.J.Super.

9   2001), for example, the court held that the plaintiff's claim under the New Jersey

10  Consumer Fraud Act was pled with requisite particularity despite absence of

11  information as to when products were purchased and any identifying information

12  about the products.  In rejecting Defendants' 9(b) challenge, the court stated, "[t]he

13  information cited by defendant as lacking, e.g., the date plaintiffs' tires were

14  purchased, the type, size, and price of plaintiffs' tires are matters of discovery and

15  are not necessary to put defendant on notice of the specific claims against it." *Id.*

16  Similarly, Defendants here are on notice of misconduct with which they are

17  charged — marketing and selling over-the-counter medications to children under

18  the age of six when Defendants know those products to be unsafe and ineffective.[13]

19  Moreover, Plaintiffs here *have* alleged details about their purchases (unlike in

20  *Talalai*).  (*See* Kotler Compl., ¶ 4; Ostergard/Adams Compl., ¶ 4; Ostergard/Wyeth

21

22

23  _____

24      [13] Furthermore, Plaintiffs have identified specific deceptive and misleading
    statements made by Defendants.  For example, Plaintiffs allege that the Defendants'
25  products specifically state that they are for children or toddlers, and misleadingly
    contain the words children or toddler in the product names or labeling.  (Kotler
26  Compl., ¶¶ 17-21; Ostergard/Adams Compl., ¶¶ 17-21; Ostergard/Wyeth Compl., ¶¶
27  16-20; Carter Compl., ¶¶ 15-19).  Plaintiffs also identify deceptive and misleading
    statements made on Defendants' websites. *Id.*
28

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

1   Compl., ¶ 3; Carter Compl., ¶ 3).  Nothing more is required.[14]

2   **III.    CONCLUSION**

3          For the foregoing reasons, Defendants' Motions to Dismiss should be denied

4   in their entirety.

5   Dated: June 30, 2008                    Respectfully submitted,

6                                           STRANGE & CARPENTER

7

8                                           Brian Strange, Esq. (Bar No. 103252)
                                            lacounsel@earthlink.net
9                                           Gretchen Carpenter, Esq. (Bar No. 180525)
                                            gcarpenter@strangeandcarpenter.com
10                                          David Swift, Esq. (Bar No. 235033)
                                            dswift@strangeandcarpenter.com
11                                          STRANGE & CARPENTER
                                            12100 Wilshire Blvd., 19th Floor
12                                          Los Angeles, CA  90025
                                            Telephone:   (310) 207-5055
13                                          Fax:  (310) 826-3210

14                                          Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28   [14] Were the Court to find otherwise, Plaintiffs respectfully request leave to
     amend the Complaints to add any necessary facts.

Plaintiff's Memo. of P's and A's in Opposition to Defendants' Motion to Dismiss

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:

12100 Wilshire Boulevard, Suite 1900
Los Angeles, California  90025

On June 30, 2008, I served the forgoing document, described as: **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the interested parties in this action:  **[ X ] ECF** or [ ] by placing [ ] the original [ ] a true copy thereof to in an envelope addressed only as follows:

Cheryl L. Mann, Esq.
Allyson N. Ho, Esq.
Stephanie D. Wade, Esq.
Earl B. Austin, Esq.
Baker Botts LLP
2001 Ross Avenue
Dallas, Texas 75201
Tel: 214-953-6839
Cell: 214-563-3088
Fax: 214-661-4839
*cheryl.mann@bakerbotts.com*
*allyson.ho@bakerbotts.com*
*stephanie.wade@bakerbotts.com*
*earl.austin@bakerbotts.com*

Aton Arbisser, Esq.
Kaye, Scholer LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067
Tel: 310-788-1000
*aarbisser@kayescholer.com*

*Attorneys for Defendant*

**[ X ]    VIA ECF**

[ ] I deposited such an envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ X ] As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

1    **[  ] BY PERSONAL SERVICE**

2        I delivered such envelope by hand to the addressee.
Executed on June 30, 2008, at Los Angeles, California.

3

4    **[ X  ] (Federal)**    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

5

                          _____

6                               Ivan Ariza

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28